# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| **MARIA LEONARDA DOMINGUEZ LOPEZ,** *Petitioner,* | |
| **v.** | **Civ. No.: MJM-26-918** |
| **MARKWAYNE MULLIN,** *et al.,* *Respondents.* | |

## MEMORANDUM OPINION

This matter is before the Court on Petitioner Maria Leonarda Dominguez Lopez's ("Petitioner") Motion for Preliminary Injunction, ECF No. 2; Amended Petition for Writ of Habeas Corpus, ECF No. 16; and Second Amended Petition for Writ of Habeas Corpus and Motion for Temporary Restraining Order,[1] ECF No. 30; and Respondents' Motions to Dismiss, ECF Nos. 18 & 34. Petitioner primarily seeks immediate release from Respondents' custody. ECF No. 16 at 9; ECF No. 35 at 10. As alternative forms of relief, Petititioner seeks a bond hearing, ECF No. 16 at 9–10, and an injunction against Respondents removing her to Mexico unless an Immigration Judge ("IJ") reviews Respondents' denial of a third country screening, ECF No. 30 at 11; ECF No. 35 at 10. Respondents argue that Petitioner fails to state a claim for relief, that U.S. Immigration and Customs Enforcement ("ICE") has the lawful authority to detain and remove Petitioner, ECF No. 18-1 at 11, and that she is not entitled to IJ review of the denial of a third country screening, ECF No. 34-1 at 14.

Upon review of the record and consideration of the parties' arguments, the Court will GRANT Petitioner's first Amended Petition, ECF No. 16; DENY the Respondents' Motions

---

[1] While it is styled in part as an "Amended Petition for Writ of Habeas Corpus," this filing largely consists of legal argument, sets forth the standard of review applicable to motions for preliminary injunctive relief, and ultimately requests a preliminary injunction. *See generally* ECF No. 30. The Court does not construe this filing as a petition for a writ of habeas corpus but as a motion for preliminary injunctive relief. The operative habeas petition in this case is the first Amended Petition filed on March 20, 2026. ECF No. 16.

to Dismiss, ECF Nos. 18 & 34; and DENY Petitioner's motions for preliminary relief as moot, ECF Nos. 2 & 30.

## I.    BACKGROUND

Petitioner is a citizen of El Salvador who entered the United States without inspection on or around October 15, 2014. ECF No. 16 at 4. She was placed in removal proceedings shortly thereafter, and on May 1, 2019, she was granted withholding of removal under the Convention Against Torture ("CAT") by an IJ. *Id.* Petitioner was released from ICE custody three months later, on August 1, 2019. ECF No. 18-1 at 8.

Petitioner's release was conditioned on compliance with her Order of Supervision ("OSUP"), which required her to check in regularly with ICE. *Id.* at 8–9; *see* 8 U.S.C. § 1231(a)(3). She complied with the terms of her release and has lived a quiet life, now married with multiple U.S. citizen children. ECF No. 16 at 4. But on March 2, 2026, Petitioner was detained while attending an ICE check-in required by her OSUP. ECF No. 14-2.

Petitioner filed her initial Petition for Writ of Habeas Corpus on March 4, 2026, along with a Motion for a Preliminary Injunction. ECF Nos. 1 & 2. Respondents filed their Response to the Petition and Motion to Dismiss on March 17, 2026. ECF No. 14. Petitioner then filed an Amended Petition on March 20, 2026, asserting the claims addressed below. ECF No. 16. Respondents filed a Response to the Amended Petition and Motion to Dismiss on March 31, 2026. ECF No. 18. Petitioner filed another Amended Petition seeking preliminary injunctive relief on May 7, 2026. ECF No. 30. Respondents filed their Response to the Second Amended Petition and Motion to Dismiss on June 1, 2026. ECF No. 34. Petitioner filed a reply on June 15, 2026. ECF No. 35.

## II.    DISCUSSION

A federal district court may grant a writ of habeas corpus to a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241. Here, Petitioner alleges that her detention violates (1) her procedural due process rights under the Fifth Amendment and the *Accardi* doctrine, as her release was revoked without compliance with applicable regulations; (2) her substantive due process rights under the Fifth Amendment because her liberty is restricted without justification; and (3) multiple provisions of the Immigration and Nationality Act ("INA") and implementing regulations. ECF No. 16 at 6–9. The Court will grant relief on Count One of the Amended Petition.

Under the *Accardi* doctrine, "an agency's failure to afford an individual procedural safeguards required under its own regulations may result in the invalidation of the ultimate administrative determination" where a petitioner demonstrates "prejudice resulting from the violation." *United States v. Morgan*, 193 F.3d 252, 266–67 (4th Cir. 1999); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). "Prejudice is 'presume[d]' however, where 'an entire procedural framework, designed to insure the fair processing of an action affecting an individual is created but then not followed by an agency.'" *Marroquin Escobar v. Noem*, Civ. No. PX-26-590, 2026 WL 1109342, at *3 (D. Md. Apr. 24, 2026) (quoting *Delgado-Corea v. Immigr. & Naturalization Serv.*, 804 F.2d 261, 263 (4th Cir. 1986)). Here, Petitioner contends that Respondents failed to comply with applicable regulations establishing procedural safeguards when revoking her release. ECF No. 16 at 5–7.

First, the Court finds it necessary to determine which regulatory provisions apply to the revocation of Petitioner's release, as that will determine the process that Respondents were required to follow. Although the Notice of Revocation of Release ("the Notice") states that Petitioner's release was revoked pursuant to 8 C.F.R. § 241.13(i), ECF No. 14-2 at 2, and

Respondents allege the same, ECF No. 18-1 at 9, the Court finds that Respondents were required to follow the revocation procedures under 8 C.F.R. § 241.4(*l*).

The Court must emphasize that the appropriate regulatory authority under which a noncitizen's release may be *revoked* is based on which regulatory authority provided for the noncitizen's *release*. *See Santamaria Orellana v. Baker* (*Santamaria Orellana I*), Civ. No. TDC-25-1788, 2025 WL 2444087, at *5–6 (D. Md. Aug. 25, 2025); *Nawabi v. Trump*, Civ. TDC-25-3831, 2026 WL 1584489, at *3 (D. Md. June 6, 2026). The regulations at § 241.4 establish the default set of rules for detention and release of a noncitizen after issuance of a final order of removal, including individuals granted withholding of removal under the CAT. *Id.* at *5; 8 C.F.R. § 241.4(b)(3). The regulations at § 241.13, however, were implemented in response to the U.S. Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), to establish a custody review system for individuals detained beyond the expiration of the removal period prescribed in 8 U.S.C. § 1231 who made an affirmative request to be released on due process grounds. *See* 8 C.F.R. § 241.13(a); *Continued Detention of Aliens Subject to Final Orders of Removal*, 66 FR 56967-01 (Nov. 14, 2001).

Here, there are no facts in the record to suggest that Petitioner was released pursuant to § 241.13. As was found in *Santamaria Orellana I*, "based on the known facts, including that [petitioner] was inadmissible under 8 U.S.C. § 1182, [petitioner] was necessarily released pursuant to the authority set forth in 8 U.S.C. § 1231(a)(6) and was therefore subject to the requirements of 8 C.F.R. § 241.4." 2025 WL 2444087, at *5. The fact that Petitioner here was issued her OSUP the day following the expiration of the 90-day removal period further supports this finding. As previously summarized in this District, "[§] 241.13(i) applies to noncitizens who have been detained *beyond* the 90-day removal period following a final order of removal." *Marroquin Escobar*, 2026 WL 1109342, at *3 (emphasis added). Petitioner here was not

detained beyond the 90-day removal period; therefore, her release must have been pursuant to the typical procedures prescribed in § 241.4.[2]

Turning now to the question of whether Respondents sufficiently complied with the revocation procedures due under § 241.4, the Court finds that they did not. Revocation of release under this section must be authorized by an Executive Associate Director ("EAD") or, where "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the [EAD]", the Field Office Director ("FOD"). 8 C.F.R. § 241.4(*l*)(2); *see also Santamaria Orellana v. Baker* (*Santamaria Orellana II*), Civ. No. TDC-25-1788, 2025 WL 2841886, at *3 (D. Md. Oct. 7, 2025). This requirement is clearly reflected in Petitioner's Notice. *See* ECF No. 14-2 at 3 ("Note: 8 C.F.R. § 241.4 revocation must be EAD or FOD where there is a public interest to do so and referral to EAD not reasonable."). Petitioner's Notice was signed by Nikita Baker, the Deputy Field Office Director—*not* Vernon Liggins, the Acting Field Office Director.

Respondents here claim that at the time the Notice was signed, Vernon Liggins was out of the office and that he had delegated his duties and authorities to his Deputy Field Office Director. ECF No. 18-4 at 2. In her declaration, Nikita Baker claims that "[i]t is within the [acting] FOD's authority and discretion to delegate duties and authorities to others as needed." *Id*. She further states that she "signed the Notice of Revocation of Release after determining that revocation of the release was in the public interest and circumstances did not reasonably permit referral of the case to the [EAD]."[3] *Id*. at 3. While Respondents claim that this delegation

---

[2] Although Respondents claim that Petitioner's OSUP "was revoked pursuant to 8 C.F.R. § 241.13(i) because circumstances have changed such that there is a likelihood of her removal in the reasonably foreseeable future," ECF No. 34-1 at 10, this provision applies only to persons who were, in fact, released under § 241.13. Section 241.4(*l*)(2)(iii) also gives the option to revoke release when a removal order may be enforced, pursuant to the procedural safeguards set forth in § 241.4(*l*).

[3] This affirmative acknowledgement that Nikita Baker was following the procedures outlined in § 241.4(*l*), rather than § 241.13(i), further supports the Court's finding that § 241.4 is the applicable authority here.

from the Acting FOD to a lower official was lawful, they have provided no legal authority to support this claim, and judges in this District have repeatedly found otherwise. *See, e.g.*, *Vasquez Tejada v. Liggins*, Civ. No. PX-26-952, 2026 WL 1072773, at *3 (D. Md. Apr. 20, 2026) ("[N]othing supports that the Acting Field Office Director can delegate [revocation] authority to a lower officer"); *Marroquin Escobar,* 2026 WL 1109342, at *4; *Santamaria Orellana II*, 2025 WL 2841886, at *3.

Furthermore, at the time she was detained, the revocation of Petitioner's release was not authorized by *anyone*, and she was not served with the Notice—a clear violation of the regulation requiring that notice, including "the reasons for revocation of [] her release," be given "[u]pon revocation." 8 C.F.R. § 241.4(*l*)(1); *see also Marroquin Escobar*, 2026 WL 1109342; *Majano Valle v. Liggins*, Civ. No. GLR-26-1684, ECF No. 11 (D. Md. June 9, 2026). Here, the Notice was not signed and authorized until March 6, 2026, by which point Petitioner had already been detained for four days. ECF No. 14-2 at 3. To make matters worse, "Respondents were unable to locate documentation reflecting service [of the Notice] upon Petitioner on or after March 5, 2026," and only served her with such Notice on April 27, 2026— almost *two months* after being taken into custody on March 2, 2026. ECF No. 28 at 2. For the same reasons stated in *Marroquin Escobar,* Respondents here "do not cure the defect by issuing the second notice," as Respondents had detained Petitioner for nearly two months before giving her "the notice and an opportunity to be heard 'upon revocation.' This hardly can be considered an adequate pre-deprivation process." 2026 WL 1109342, at *4 (quoting 8 C.F.R. § 241.4(*l*)(1)).

"Although, 'not every technical failure to comply with policies or procedures violates the Constitution,' where the regulations safeguard against unconstitutional deprivations of liberty, they must be followed." *Id*. (quoting *Santamaria Orellana II*, 2025 WL 2841886, at *5). This Court therefore "joins the growing chorus of district courts that have concluded

Respondents' failure to follow [their] own regulations concerning revocation of release violates the *Accardi* doctrine." *Id.* (collecting cases). Accordingly, the Court will grant the first Amended Petition, ECF No. 16, and order that Petitioner be released from custody immediately. *See Marroquin Escobar*, 2026 WL 1109342, at *5 (ordering immediate release). Having found such relief warranted, the Court declines to reach the merits of Petitioner's other claims.[4]

## III.    CONCLUSION

For the foregoing reasons, Petitioner's first Amended Petition for Writ of Habeas Corpus is GRANTED, Petitioner's motions for preliminary injunctive relief are DENIED as moot, and Respondents' Motions to Dismiss are DENIED. A separate Order will issue.

7/10/26

Date

Matthew J. Maddox
United States District Judge

---

[4] As noted *supra*, Petitioner's Second Amended Petition is properly construed as a motion for preliminary injunctive relief. *See* ECF No. 30. In that motion, Petitioner seeks a preliminary injunction "prohibiting Respondents from removing Petitioner to Mexico unless an Immigration Judge reviews the denial of third country screening, and concurs in the denial." *Id.* at 11. In Petitioner's subsequent reply, she clarifies that the ultimate relief she seeks in this matter is release from custody. ECF No. 35 at 10. She only seeks the injunction against removal without IJ review and concurrence "[i]n the alternative[.]" *Id.* Because this Court is granting immediate release—the ultimate relief Petitioner seeks in this matter—her alternative request for an injunction against removal is moot.